Follmer Trucking Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 10, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*James H. Booser,* of *McNees, Wallace & Nurick,* for protestants, appellants.

*Mark E. Garber,* for protestant, appellant.

*Robert H. Shertz,* of *Shertz, Barnes & Shertz,* for applicant, appellee.

*William J. Grove,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, and *Lloyd S. Benjamin,* Acting Counsel, for Pennsylvania Public Utility Commission.

OPINION BY ROSS, J., July 17, 1952:

On July 18, 1938, Highway Express Lines, Inc., then known as Horlacher Delivery Service, Inc., filed an application with the Pennsylvania Public Utility Commission requesting authority to transport property as a Class A carrier. The application was given limited approval on November 28, 1939, in an order which granted applicant the right to transport property as a Class A carrier from the Philadelphia area and points to Delaware, Chester, Montgomery and Bucks Counties to all points "North of the Village of Trappe through Reading, Sunbury and Williamsport to Lock Haven", including spur routes. The order placed in applicant's certificate the following condition: "THIRD: That no right, power or privilege is granted to transport property from or to the City of Sunbury, or the Borough of Milton, Northumberland County.", and denied applicant authority to serve the spur routes from Reading to Lebanon, Lewisburg to Mifflinburg, and Northumberland to Nanticoke.

The instant proceedings were instituted to secure rights to serve Sunbury and Milton, and the spur on Route 11 between Northumberland and West Nanticoke. A number of protests were filed, including those

of Follmer Trucking Company, Hall's Motor Transit Company and Motor Freight Express. The Commission, having before it a record of testimony adduced at ten hearings held over a period of years and consisting of 1098 printed pages, made an order which amended the order of November 28, 1939 by eliminating therefrom the condition with respect to the right to transport property from or to Sunbury and Milton. The application was denied as to all other requests for rights. From this order the protestants named above have appealed to this Court.

The appellants attack the order of the Commission on the ground that it does not meet the standard set up in section 1005 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS sec. 1395, which provides inter alia: "After the conclusion of the hearing, the commission shall make and file its findings and order with its opinion, if any. Its findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." Here, the Commission, after discussing the evidence, stated: "We recognize the convenience that would result to the shipping public if the applicant is authorized to render service from and to Sunbury and Milton. The applicant's trucks pass through these points regularly in connection with its Class A operation between Philadelphia area and Lock Haven and the removal of the restriction in its certificates which prohibits service by applicant from and to Sunbury and Milton would tend to improve the service from and to said points. Furthermore, we are of the opinion that to permit the applicant to serve Sunbury and Milton would tend to improve the existing service. *Upon careful consideration of all the evidence, we conclude and find that the elimination of the condition which prohibits the transportation of property from*

*or to Sunbury and Milton is necessary or proper for the service, accommodation, convenience or safety of the public. . . ."* (Italics supplied.)

In *Alko Express Lines v. Pa. P. U. C.*, 152 Pa. Superior Ct. 27, 30 A. 2d 440, the protestants contended on appeal that the Commission failed to make sufficient detailed findings of basic facts to support its conclusions. In that case, the Commission, after discussing the evidence and the contentions of the respective parties, stated: "After a careful analysis and consideration of all the evidence in this record, we find and determine that the proposed service between the Philadelphia and Pittsburgh Metropolitan areas is necessary or proper for the service, accommodation and convenience of the public; . . ." In holding that the findings of the Commission were adequate we stated at page 35—and we repeat: "It is always commendable for the Commission to set forth the controlling facts and the reasons for the conclusions reached with sufficient particularity so that courts may fully understand the foundation upon which rests the Commission's order. In this instance, the primary findings might well have been more specific but we had no real difficulty in determining the important facts which apparently influenced the Commission to make its final order. It is not necessary to make as detailed findings in a case of this character as in a rate case. . ." The findings under attack in the *Alko Express Lines* case and those found objectionable by the appellants herein are identical in every material particular and on this issue, therefore, this case is ruled by the *Alko* case.

A large number of witnesses for the protestants testified that existing services are satisfactory to them and adequate for their needs. However, that is not the test. *Lyons Transportation Co. v. Pa. P. U. C.*,

163 Pa. Superior Ct. 335, 61 A. 2d 362. The issue is whether there is a public need for the service which the applicant proposes to render. *Ferrari v. Pa. P. U. C.*, 163 Pa. Superior Ct. 24, 60 A. 2d 602. Section 203 of the Public Utility Law as amended, 66 PS sec. 1123, provides inter alia: "A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public; . . ." Section 1107, 66 PS sec. 1437, directed that "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

There is here no error of law nor violation of constitutional rights. Our inquiry is, therefore, limited to the question of whether there is substantial evidence to support the finding of public necessity for the certified service. *Aizen v. Pa. P. U. C.*, 163 Pa. Superior Ct. 305, 60 A. 2d 443. "In this respect, substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129, 133, 61 A. 2d 343. Substantial evidence has also been said to mean evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660. See, also, Wilbert v. Commonwealth of Pennsylvania Second Injury Reserve Account, 143 Pa. Superior Ct. 37, 48, 17 A. 2d 732. 'Substantial evidence' is synonymous with 'competent and relevant evidence

having a rational probative force'." *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.,* 170 Pa. Superior Ct. 411, 416, 85 A. 2d 646. In the instant case, applicant called a number of shipper witnesses representing firms making shipments from and to Sunbury and Milton from various points in the Philadelphia area and in Delaware, Chester, Montgomery and Bucks Counties. It is our opinion that the testimony of these witnesses placed upon the record substantial evidence to support the finding of public necessity.

We will not discuss the testimony of all the witnesses for the applicant. However, the following testimony is typical in its material aspects: Dorothy Myerson, employed by Lummis and Company of Philadelphia, testified that it was her job to route shipments and select carriers for the company's product, peanuts. She stated that the company had shipments for Sunbury and Milton "most every day" ranging in size from "a couple hundred pounds" to "maybe a thousand pounds". The company had been using Follmer for these shipments. The witness testified that "quite often" Follmer delayed making pick-ups so that it was necessary for Lummis to carry shipments to Follmer's platform to get them out. She stated that Reading Transportation was unsatisfactory because "they didn't pick up at all". The applicant's trucks make daily stops at Lummis and Company for shipments to other points. The witness stated that it would be desirable from the shipper's standpoint to load its Sunbury and Milton shipments on the same truck. Witness Cunningham was employed as a shipper for a Philadelphia wholesale dealer in sacramental wines and in groceries. Shipments were made to Sunbury. Follmer was not used because it did not have a permit to carry wine, Reading Transportation was unsatisfactory because it "took so long to get down after it" and shipments to

Sunbury via American Railway Express were unsatisfactory because there was no direct delivery. The witness had used applicant as a carrier to other points and said its service "couldn't be better". Walter Bailey testified that he was employed by a wholesale drug concern operating out of Philadelphia, as superintendent and traffic manager. The company ships to Sunbury and Milton as well as to other points and shipments are made to retail druggists and it is important that overnight service be available. Bailey testified that his company had used Follmer for 15 years. He stated, however, that Follmer missed pickups regularly though he had complained and they had assured him "that they were going to do everything in their power to improve the service". In reviewing this testimony the Commission stated: "[Bailey] gave substantial testimony that Follmer's service between Philadelphia and points proposed to be served by applicant is unsatisfactory."

Carl Jones, a shipping clerk for R. C. Automotive Products, Inc., of Fernwood, testified that the company made shipments to Sunbury; that Pennsylvania Railroad and Railway Express were used; and that no motor carrier would provide direct service with a pickup at the Fernwood plant. Reading Transportation and Follmer were called but did not provide the service. Jones stated that overnight service is necessary to his company if it is to meet competition and that the company had lost customers by reason of the slow delivery provided by the existing facilities. Joseph Glenn and Sons, a partnership, maintains a manufacturing plant at Primos, Delaware County, where they manufacture leather power transmission belting. One of the partners testified that shipments were made to Milton by Railway Express "which is expensive" and by Pennsylvania Railroad "which is slow". Follmer

was asked to make pickups at the plant and informed the shipper that it did not make pickups in that area and referred the shipper to another carrier. The witness testified, "We'd like to have overnight [service] because when they order our product they are in need of it; it is one of those things that when a machine breaks down, they order the belt, they don't order it a week ahead." J. Warren Bullen, Jr. testified that he is secretary and plant manager of Bullen Chemical Company, Inc., located at Folcroft, Delaware County. The corporation manufactures chemical products for use in "schools, hospitals, institutions and organizations of that type". Bullen testified that the business of the corporation is "highly competitive, and service is a very important factor . . . if a hospital sends a rush call into us for a disinfectant or other surgical soaps, or other materials of that nature, it is up to us to get it there." Service by Pennsylvania Railroad is too slow to meet the needs of the shipper. Existing motor carrier service requires that the shipper deliver the shipment to a Philadelphia terminal in its own trucks or use a local carrier to do the initial hauling. Both of these expedients are overly expensive. Bruce E. Reeder testified that he is a shipper for the Chester Lace Mills, Chester. The company produces lace curtains, lace drapery, net and lace table covers which are shipped in cartons weighing from one to two hundred forty pounds. The business of the company is highly competitive with competitors located in Philadelphia, Scranton and Wilkes-Barre. The shipper has customers in Sunbury and Milton. Reeder testified that the only direct service available from Chester to Sunbury is that furnished by Railway Express. This service is not satisfactory because it is too expensive and too slow. Existing service by motor carrier requires an interchange and is unsatisfactory because the extra

handling of the goods tends to damage them. Norman A. Wilson testified that he is employed by the Sun Oil Company as first assistant traffic engineer. Sun Oil shipments originate at Chester and Marcus Hook, and the company serves customers in Sunbury and Milton. Its product is petroleum and petroleum products in barrels, containers and packages. Customers using what the witness described as "specialty oils" do not carry inventories and hence want oil in small lots of two to ten drums. Wilson stated that Sun Oil would use applicant to Sunbury and Milton if the application was approved because "we'd get a daily pick-up". B. W. Stradley testified that he is the "operational manager" for six paint companies having shipping points at Philadelphia and Phoenixville. Shipments are made by these companies from each shipping point to Sunbury and Milton. Shipments originating in Phoenixville are carried to Philadelphia in shipper's trucks and then via Follmer to the points covered in the application. The witness stated that the existing service is unsatisfactory because company trucks which could be put to other use are tied up hauling shipments from Phoenixville to Philadelphia, thus increasing the cost of transportation.

This is another case in which the application as approved does not extend the area of applicant's operations but merely extends its operating rights within an area it is already serving. Pertinent, therefore, is the language of this Court in *Mod. Trans. Co. v. Pa. P. U. C.*, 139 Pa. Superior Ct. 197, 203-204, 12 A. 2d 458: "The order of the commission has not extended the area of operations of the particular carrier but has permitted it to serve persons whose doors this utility passed in its former operations and has permitted the carrier to give additional service within the same area and on the same routes to those at whose doors they

were actually stopping but whose demands they could only satisfy in part. . . . We have no doubt the commission gave due weight to the fact that York Motor was passing many points where at little additional cost it might furnish more service at less average cost and at the same time accommodate the public. To promote such economies is one of the duties of the commission."

It is not disputed that there is a need for service of the type and within the area set forth in the application involved in this proceeding. Whether that need is filled by the appellants or whether the applicant should be certified to furnish additional service are purely administrative questions to be determined by the commission. *John Benkart & Sons Co. v. P. U. C.,* 137 Pa. Superior Ct. 13, 7 A. 2d 588; *Colombo v. P. U. C.,* 159 Pa. Superior Ct. 483, 48 A. 2d 59; *Sayre v. P. U. C.,* 161 Pa. Superior Ct. 182, 54 A. 2d 95. The extent to which there shall be competition in intrastate transportation is largely a matter of policy which the Legislature has committed to the sound judgment and discretion of the commission (*Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.,* 170 Pa. Superior Ct. 411, 85 A. 2d 646), and here we find no abuse of discretion. We are not persuaded that this case presents anything more than an administrative question to be decided by the Commission. *Highway Express Lines, Inc., v. Pa. P. U. C.,* 161 Pa. Superior Ct. 98, 54 A. 2d 109; *Yellow Cab Co. v. Pa. P. U. C.,* 161 Pa. Superior Ct. 41, 54 A. 2d 301; *Gallagher & Sons v. Pa. P. U. C.,* 161 Pa. Superior Ct. 243, 53 A. 2d 842; *H. J. Gongaware & Sons v. Pa. P. U. C.,* 163 Pa. Superior Ct. 9, 60 A. 2d 364.

Order affirmed.