Pennsylvania Railroad Company, Appellant, *v.* Pennsylvania Public Utility Commission.

344

Argued March 28, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Donald A. Brinkworth,* with him *Basis S. Cole,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, *Thomas M. Kerrigan,* Acting Counsel, and *Harris J. Latta, Jr.,* Assistant Counsel, for Public Utility Commission, appellee.

*G. Thomas Miller,* with him *Ernie Adamson, J. Paul Rupp, James H. Alton,* and *Bailey & Rupp,* for applicant, intervening appellee.

*Robert R. Wertz,* for intervening appellee.

*Randolph W. Childs,* with him *J. Stokes Adams, III,* and *Adams & Childs,* for intervening appellee.

OPINION BY HIRT, J., July 17, 1956:

For more than 20 years W. J. Dillner Transfer Company had been actively engaged in truck transportation as a common carrier. On August 12, 1954, and prior thereto, Dillner, as we shall call this company, had authority under certificates of public convenience, to transport property between points in Allegheny County as a Class D carrier, and to other points in Pennsylvania from Allegheny County as a Class C carrier. Dillner also had authority to haul heavy shipments of specific products from Pittsburgh to points within 200 miles of that city subject to stated limitations. On the above date Dillner filed an application with the Commission for a new certificate the effect of which would be to extend materially the field of its operations. Protests were filed to the application by 41 motor carriers, and by The Pennsylvania Railroad Company on the ground alleged that the service then provided by it and other common carrier transportation agencies, between the points embraced within the application "is adequate and sufficient to serve the needs of the public." Hearings were held on the application in which, on resting its proofs in the proceeding, Dillner requested the grant of temporary operating authority (pending final disposition of the application) to transport property from points in Allegheny County to other points in Pennsylvania set forth in the application. Pennsylvania Railroad along with other carriers filed their protests to this application for temporary rights. The Commission subsequently however over their objection gave Dillner "special permission to transport, as a common carrier, by means of flat-bed trucks or trailers, iron and steel and iron and steel ar-

ticles and products in pieces, packages, or bundles weighing 1,000 pounds or more each and materials and supplies used in the production of iron and steel and iron and steel articles and products on pallets from points in the County of Allegheny to points in the City of Philadelphia and within 35 airline miles of the limits of said city, and vice versa, for a period of four months beginning April 18, 1955, pending disposition of the application, with the proviso that the granting of special permission should have no bearing upon final disposition of the application." We granted supersedeas but on July 25, 1955, after hearing, the Commission in a short-form order granted to Dillner the transfer rights as a Class D carrier, which it had applied for, in substantially the language of the above temporary order. There were added limitations but they are not material here. Six motor carriers and the Pennsylvania Railroad appealed from this order. On their application we granted limited supersedeas. By the terms of the supersedeas Dillner was prohibited from operating under the order of July 25, 1955 except that permission was granted to transport iron and steel products for the United States Steel Corporation from points in Allegheny County to points in the City of Philadelphia and points within 20 miles thereof, and refractory products on pallets for E. J. Lavino and Company from Philadelphia and points within 20 miles of the city to points in Allegheny County. Thereafter at the request of the Public Utility Commission the record in these appeals was remitted to the Commission for further consideration and the making of specific findings. After the remission of the record the Commission on September 26, 1955 issued its long-form order, supported by a review of the testimony and findings of fact in which it affirmed, in substance, its prior order of July 25, 1955. From this order Pennsylvania

Railroad and the other protestants appealed. We again granted supersedeas pending argument and disposition of the appeals.

On November 21, 1955, on the application of all of the appellants (except The Pennsylvania Railroad Company) in which Dillner joined, we remanded the record for further consideration and for modification of the Commission's order of September 26, 1955, in accordance with a stipulation and agreement which had been entered into by these appellants with Dillner. On January 3, 1956, the Commission, modified its order of September 26, 1955 defining Dillner's authority, to read as follows: "To transport, as a Class 'D' carrier, for the United States Steel Corporation and its wholly owned subsidiaries, by means of flat-bed trucks and/or trailers. iron and steel and iron and steel articles and products, in pieces, packages or bundles weighing one thousand (1,000) pounds or more each, from points in the County of Allegheny to the City of Philadelphia and points within an airline distance of thirty-five (35) miles of the limits of said city, and vice versa. To transport, as a Class 'D' carrier, by means of flat-bed trucks and/or trailers, refractory products, on pallets from the City of Philadelphia and points within an airline distance of twenty (20) miles of the limits of said city to points in the County of Allegheny." The order of September 26, 1955, in other respects, remained in full force and effect. Thus the changes in the prior order limited (1) "The transportation of iron and steel products to transportation 'for the United States Steel Corporation and its wholly owned subsidiaries' "; (2) limited "The origin of the movement of palletized refractory products to the City of Philadelphia and points twenty (20) airline miles from its limits" and (3) limited "The movement of refractory products to westbound movements only."

In making the order the Commission stated: "It is thus apparent that the modification sought herein by applicant and protestant motor carriers will in no way enlarge the authority already granted by us, and, it is our opinion that the public interest will be as well served by the changes requested. There will still exist a specialized and integrated transportation service for the movement of iron and steel products, and brick between the industrial areas of Pittsburgh and Philadelphia. It is also our opinion that the interest of The Pennsylvania Railroad Company will not be further impaired by these changes, inasmuch as the effect of the changes reduces the authority granted by our order of September 26, 1955. Under the circumstances, we conclude and therefore find that the modification of our order of September 26, 1955, as prayed for herein, is necessary and proper for the service, accommodation and convenience of the public."

After the above order the appeals of all of the motor carriers were withdrawn, leaving The Pennsylvania Railroad Company as the sole remaining appellant before us. This appellant contends that the action of the Commission in issuing certificates of public convenience and necessity to Dillner under the orders of September 26, 1955 and January 3, 1956, is arbitrary and in violation of law in three respects. It is contended that (1) there is a lack of support of the orders by substantial competent evidence; (2) the findings of the Commission are not sufficiently specific and definite and (3) the order in part is based on prior proceedings before the Commission and on judicial notice of other matters outside this record.

The scope of our review in cases of this kind is definitely limited. The order of the Commission may not be set aside by us except for error of law or lack of evidence to support it; no constitutional question is in-

volved. The burden on an applicant to establish need for proposed service is met by showing that it is reasonably necessary for the accommodation or convenience of the public. Absolute necessity need not be proved. *Zurcher v. Pcnn. P. U. C.*, 173 Pa. Superior Ct. 343, 98 A. 2d 218. The question of reasonable necessity for the service, before the Commission, was purely administrative; we therefore may not exercise an independent judgment on appeal from a determination of that question and sit as a "super-administrative" board. *Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646.

There is ample evidence in support of the transportation rights granted in the first paragraph of the order of January 3, 1956. W. M. Ernst, traffic manager of United States Steel Corporation in Pittsburgh, testified that on a "day-to-day basis for almost five years" U. S. Steel had used Dillner's trucking service for the shipment of its products from all of its nine plants in Allegheny County and that, as evidencing the volume of the materials transported, during the first eight months of 1954, U. S. Steel shipped on Dillner trucks more than 20,000 tons of iron and steel products from the Pittsburgh area to other points in Pennsylvania; that during the same period Dillner delivered to U. S. Steel at its plants in the Pittsburgh district more than 9,000 tons of "inbound mill supplies"; and that U. S. Steel needs the service of Dillner for which it has applied in the present proceeding.

Supporting the rights granted in the second paragraph of the order, relating to shipment of refractory products from eastern Pennsylvania to Allegheny County, Grant Arnold, traffic manager of E. J. Lavino Company testified: that Lavino Company manufactures and supplies the steel industry with essential basic refractory products, i.e., fire brick, fire brick shapes and high

temperature bonding mortar; that shipments of these products are made from its plant at Plymouth Meeting, about 20 miles from Philadelphia to steel mills in the Pittsburgh area, on pallets weighing 3200 to 3300 pounds; that Dillner had "pioneered" methods of securing loaded pallets on flat-bed trailers and that it owned the type of equipment, with draw chains, essential to handling the shipments; that by perfecting handling techniques Dillner has created a demand for the service it offers; that Lavino needs the Dillner service to meet out-of-state competitors who deliver by truck into Pennsylvania; that shipment of refractory products by motor carrier is more advantageous than by rail because of shorter handling time as well as less damage to shipments in transit and better control of the traffic and shorter delivery time. There is other evidence that transportation of steel and refractory products by truck is an important and growing service in Pennsylvania; that Dillner has the specialized equipment necessary for hauling these heavy commodities and that the grant of the limited authority to Dillner under the present order will not adversely affect other east-west carriers. That competing truck carriers will not be injured by the orders in any material respect is rather conclusively demonstrated by the fact that they all have withdrawn from this proceeding as protestants and appellants.

The Pennsylvania Railroad Company operates its main line between the Philadelphia and Pittsburgh areas, and by means of a network of rail lines with many freight stations serves practically all major industrial operations throughout the state. This appellant has hauled large quantities of U. S. Steel products (in 1954 it transported 2901 cars of steel and brought to U. S. plants in the area 2531 carloads of materials) and the railroad will continue to transport steel and steel products for this shipper. This appellant con-

tends however that it can adequately meet all of the transportation needs of U. S. Steel. It is developing a "Trucktrain" or "Trailer-on-Flat-Car Service" and the railroad has the necessary flat-bed trucks for this service. It is admitted however that the service still is, in part at least, "an experimental proposition." As to transportation of refractory products there would be delays under appellant's own testimony in accumulating other freight necessary to make up a train; and as to steel, the appellant could not provide better than second morning delivery of trucktrain steel shipments out of Pittsburgh.

The following from the opinion of Judge Ross in *Follmer Trucking Co. v. Pa. P. U. C.*, 171 Pa. Superior Ct. 75, 85, 90 A. 2d 294, is applicable and decisive here: "It is not disputed that there is a need for service of the type and within the area set forth in the application involved in this proceeding. Whether that need is filled by the appellant or whether the applicant should be certified to furnish additional service are purely administrative questions to be determined by the commission. John Benkart & Sons Co. v. P. U. C., 137 Pa. Superior Ct. 13, 7 A. 2d 588; Colombo v. P. U. C., 159 Pa. Superior Ct. 483, 48 A. 2d 59; Sayre v. P. U. C., 161 Pa. Superior Ct. 182, 54 A. 2d 95. The extent to which there shall be competition in intrastate transportation is largely a matter of policy which the Legislature has committed to the sound judgment and discretion of the commission (Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C., 170 Pa. Superior Ct. 411, 85 A. 2d 646), and here we find no abuse of discretion."

The purpose of §1005 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1395 (which provides that the Commission shall make detailed findings), is an aid of this court on appeal, in determining the controverted questions involved. Cf. *Philadelphia v. Pa.*

*P. U. C.,* 162 Pa. Superior Ct. 425, 429, 57 A. 2d 613. The complaint that findings are insufficient, when warranted therefore, in reality should come from us. But formal findings in proceedings such as this are not as essential as in some others, e.g., as in rate cases. And in this proceeding more detailed and specific findings would not have been helpful to us.

Appellant's contention that the Commission improperly considered portions of the records of other proceedings before it on previous occasions, is also without merit. An historical approach by the Commission was made necessary by the fact that in the application before it Dillner sought the grant of enlarged carrier rights which brought into focus the rights which it had enjoyed Accordingly the Commission's historical summary from its own records was appropriate as background to its decision. Moreover there is no substantial merit in appellant's contention that a number of the Commission's findings are not supported by testimony. The findings referred to are largely collateral to the main issue and even so are fairly supported by reasonable inferences from the evidence in this record.

The order of September 26, 1955, as modified by the order of January 3, 1956, is affirmed.