Daily Motor Express, Inc. et al., Appellants, *v.*
Pennsylvania Public Utility Commission.

Argued November 16, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and CARR, JJ. (ERVIN, J., absent).

*Christian V. Graf, John E. Fullerton,* and *William J. Wilcox,* with them *Alexander T. Stein,* for protestants, appellants.

*William A. Donaher,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Lloyd S. Benjamin,* with him *Heath L. Allen,* and *Hull, Leiby & Metzger,* for applicant, appellee.

OPINION BY WRIGHT, J., March 20, 1957:

We are here concerned with appeals from two orders of the Pennsylvania Public Utility Commission. The first grants additional authority to Central Storage and Transfer Company of Harrisburg (hereinafter called Central) in an application proceeding docketed at A.82019, Folder 2, Amendment A. The second disposes of complaints filed against Central docketed at C.16540, 16541, and 16557. The cases are inter-related and the appeals were consolidated for the purposes of brief, argument, and disposition. On October 4, 1956, we denied petitions for supersedeas.

Central has been engaged in the transportation business since 1920. It was originally operated as an individual proprietorship, subsequently became a family partnership, and was organized as a corporation in 1955. Under date of May 31, 1955, its then existing rights were set forth at docket 82019, folder 2, and may be summarized as follows:

1. Class B authority to transport property between points in Harrisburg.

2. Class C authority to transport property from Harrisburg to points in Pennsylvania within 100 miles of the limits of Harrisburg, limited and restricted to perishables and household furniture, provided that other property may be transported if the property of not more than two shippers or two consignees is carried on any one trip.

3. Class A authority over Harrisburg-York route, limited and restricted to the transportation of property from Harrisburg or York to Harrisburg or York, or to intermediate points, subject to the additional proviso that nothing may be transported from York to points between York and Columbia.

4. Class A authority over Harrisburg-Lancaster route, limited and restricted to transportation from Harrisburg, Lancaster or Florin to Harrisburg, Lancaster or Florin, or to intermediate points, subject to the additional proviso that nothing may be transported from Lancaster to points between Lancaster and Elizabethtown.

5. Class D property rights for General Foods Corporation from Camp Hill to points on the above routes and vice versa.

Because of questions which had been raised concerning the legality of certain of its operations, Central made application on August 2, 1955 for amendment of its certificate alleging the following reasons: (1) to follow industry from applicant's present certificated area to new plant locations; (2) to serve more effectively the growing metropolitan area of Harrisburg; (3) to remove any ambiguity from the operations currently being performed by applicant under its existing rights. Protests were filed by the several appellants

and hearings ensued. On August 6, 1956, the Commission issued a "short form" order approving the application with certain limitations voluntarily made by the applicant. These limitations excluded household goods in use and commodities in bulk as applicable to the Class A, B, and C authorities, commodities in bulk in tank trucks as applicable to the Class D authorities, and the transportation of property between the New Cumberland General Depot and the Letterkenny Ordinance Depot. Except as voluntarily limited, this order broadened Central's prior authority in the following particulars:

1. It enlarged the Class B area from Harrisburg to the area within five miles of Harrisburg.

2. It enlarged the Class C area from the City of Harrisburg to the area within five miles of Harrisburg.

3. It permitted the pick-up of freight at all intermediate points on the Harrisburg-York Class A route.

4. It permitted the pick-up of freight at all intermediate points on the Harrisburg-Lancaster Class A route.

5. It authorized the combination of the Harrisburg-York Class A route and the Harrisburg-Lancaster Class A route.

6. To the extent that the Class A routes were broadened, it broadened the vice versa portion of the Class D authority.

Following the taking of appeals, the record was remitted to the Commission and a "long form" order was issued on October 22, 1956. Based upon certain testimony in the application proceeding, complaints were filed by Motor Freight Express, Inc., Hall's Motor Transit Co., and Keystone Express and Storage Co.,

Inc. The substance of these complaints was that Central had violated its existing subsequent authority in the following respects: (1) transportation of property from an intermediate point on its Harrisburg-York Class A route to another point on the same route; (2) transportation of property from an intermediate point on its Harrisburg-Lancaster Class A route to another point on the same route; (3) combination of its Class A routes; (4) transportation of property from a point within a 100-mile radius of Harrisburg back to Harrisburg under its Class C authority; (5) transportation of property from a point within a 100-mile radius of Harrisburg back to a point within 5 miles of Harrisburg; and (6) transportation of property from points within 5 miles of Harrisburg to points within 100 miles of Harrisburg. By order dated August 6, 1956, the Commission sustained all of these complaints except the fourth. However, the Commission concluded: "Since it is clear that the violations complained of were based upon misunderstanding, it is our opinion that the record before us does not merit the imposition of any penalties particularly as we are concurrently approving respondent's application for the rights at issue".

In these appeals three questions are raised. Appellants contend (1) that there was not substantial evidence to support the order; (2) that Central failed to prove the inadequacy of existing services; and (3) that the Commission ignored Central's illegal operations and refused to invoke penalties. In passing upon these questions we must bear in mind that the extent to which there shall be competition in intra-state transportation is largely a matter of policy which the Legislature has committed to the sound judgment and discretion of the Commission: *Follmer Trucking Co. v. Pa. P. U. C.*, 171 Pa. Superior Ct. 75, 90 A. 2d 294.

The Public Utility Law[1] contains two provisions which are here material. Section 203 (66 PS 1123) provides, inter alia: "A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public; and the commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable". Section 1107 (66 PS 1437) provides: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights".

Our function was thus stated by Judge HIRT in *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 343, 124 A. 2d 685: "The scope of our review in cases of this kind is definitely limited. The order of the Commission may not be set aside by us except for error of law or lack of evidence to support it; no constitutional question is involved. The burden on an applicant to establish need for proposed service is met by showing that it is reasonably necessary for the accommodation or convenience of the public . . . The question of reasonable necessity for the service, before the Commission, was purely administrative; we therefore may not exercise an independent judgment on appeal from a determination of that question and sit as a 'super-administrative' board: Pittsburgh & Lake Erie R. R. Co. v. Pa. P. U. C., 170 Pa. Superior Ct. 411, 85 A. 2d 646".

In our most recent consideration of the subject Judge GUNTHER made the following pertinent analysis:

---

[1] Act of May 28, 1937, P. L. 1053, 66 PS 1101 et seq.

"We have stated repeatedly that our duty on appeal is not to exercise our independent judgment on the record or to weigh conflicting evidence, but it is limited in this respect to the question whether there is substantial evidence to support the findings and order of the commission . . . Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion, especially when considered in connection with the accommodation or convenience of the public": *Modern Transfer Co. v. Pa. P. U. C.*, 182 Pa. Superior Ct. 110, 125 A. 2d 463.

In seeking to combine rights under existing certificates, together with additional authority, the burden of proof is upon the applicant to establish (1) the need for the additional and proposed service, and (2) the inadequacy of existing service: *Modern Transfer Co. v. Pa. P. U. C.*, 179 Pa. Superior Ct. 46, 115 A. 2d 887. However, no particular type of evidence is required if the evidence as a whole is legally sufficient to support the order. Appellant's burden is proof "is met by showing that the proposed service is reasonably necessary for the accommodation or convenience of the public, or by establishing that existing service does not satisfy the public need and that the proposed service would tend to correct or substantially improve that condition . . . Absolute necessity for the additional service is not a requisite, and it is not necessary that applicant establish a present demand for the service in every square mile of the territory certificated; proof of necessity within the area generally is sufficient": *Zurcher v. Pa. P. U. C.*, 173 Pa. Superior Ct. 343, 98 A. 2d 218. The fact that there are other certificated carriers equipped to render the same service in the territory does not necessarily require the refusal of the application: *Benkart & Sons Co. v. Pa. P. U. C.*, 137 Pa. Superior

Ct. 5, 7 A. 2d 584. And see *Highway Express Lines v. Pa. P. U. C.*, 161 Pa. Superior Ct. 98, 54 A. 2d 109.

Appellants do not question Central's capacity to perform the service. While it is not a large carrier comparatively speaking, there was testimony that "There is definitely a great advantage to the shipping public with a smaller carrier". Central presently operates terminals at Harrisburg, Lancaster, and York. Thirty-eight employes work out of Harrisburg, eight out of Lancaster and four out of York. Its equipment consists of 54 vehicles, all properly insured pursuant to the regulations of the Commission. The financial condition of the corporation was found by the Commission to be satisfactory. In addition to the authority covered by the certificate dated May 31, 1955, Central is authorized to and does exchange shipments with other carriers, including Keystone Express and Storage Company, Inc., Horn's Motor Express, Inc., Daily Motor Express, Inc., and Jones Motor Company.

No useful purpose would be served by burdening our opinion with a recital of the testimony of the several witnesses. This was done with considerable detail in the Commission's order. With regard to the enlargement of the Class B and C rights to include points within a five mile radius of Harrisburg, Central produced witnesses to show that industrial plants and warehouses had within the past few years moved from the City of Harrisburg to points outside the City. In each instance the witness stated that his company wished to continue to make use of Central's service. Shipper witnesses also testified as to the need for service to and from intermediate points on Central's Class A routes. The evidence discloses that the rights applied for would implement Central's existing authority so as to provide for a more practical and economic

service. See *Cage v. Public Service Commission,* 125 Pa. Superior Ct. 330, 189 A. 896. To a large extent, the additional rights sought do not increase the area served, but merely extend the operating privileges within the area already being served. See *Follmer Trucking Co. v. Pa. P. U. C.,* supra, 171 Pa. Superior Ct. 75, 90 A. 2d 294. The following statement in *Modern Transfer Co. v. Pa. P. U. C.,* 139 Pa. Superior Ct. 197, 12 A. 2d 458, is particularly applicable: "The order of the commission has not extended the area of operations of the particular carrier but has permitted it to serve persons whose doors this utility passed in its former operations and has permitted the carrier to give additional service within the same area and on the same routes to those at whose doors they were actually stopping but whose demands they could only satisfy in part . . . We have no doubt the commission gave due weight to the fact that York Motor was passing many points where at little additional cost it might furnish more service at less average cost and at the same time accommodate the public. To promote such economies is one of the duties of the commission".

Testimony was also adduced concerning the inadequacy of the service of existing certificated carriers. The Commission found that "From such testimony it can be seen that these witnesses who testified to the availability of service by other carriers were clearly dissatisfied with the kind of service rendered and were clearly of the opinion that such service as existed was inadequate for their needs". The record discloses that shipper witness expressed dissatisfaction with the service rendered by several of the appellants. This testimony took the form of complaints as to the nature of the service rather than proof that the service was not available. We have recognized the probative value of

such evidence. See *Garner v. Pa. P. U. C.*, 177 Pa. Superior Ct. 439, 110 A. 2d 907. Its weight was for the Commission: *Gongaware & Sons v. Pa. P. U. C.*, 163 Pa. Superior Ct. 9, 60 A. 2d 364. "The shipping public need not be indefinitely inconvenienced by disinterested carriers": *Noerr Motor Freight v. Pa. P. U. C.*, 181 Pa. Superior Ct. 322, 124 A. 2d 393. Consideration should not be given to a carrier which has not been furnishing the public the service to which it is reasonably entitled, until another enterprising carrier seeks to render competitive service in the manner demanded by the shipping public: *Hall's Motor Transit Co. v. Pa. P. U. C.*, 150 Pa. Superior Ct. 60, 27 A. 2d 428.

Appellant's strenuously contend that Central's past operations were illegal and without justification, and that evidence as to such service should not have been received or considered by the Commission. In *Lancaster Transportation Co. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 129, 124 A. 2d 380, speaking through President Judge RHODES we said: "The mere fact of prior operation without commission approval is not per se equivalent to an offense which will prohibit absolutely the acquisition of proper authority when application is subsequently made. The distinction between those violations which are prohibitive and those which will be accepted as competent evidence is, to a large degree, dependent upon the existence of good faith. If the violation is the result of a bona fide misunderstanding of the service authorized by the commission, there is no substantial basis, either legally or morally, to object to its use in a certification proceeding . . . On the other hand, where the violation is one resulting from a deliberate disregard of the certificate limitations or the law, then, of course, the wrongdoer should not profit from his own deliberate wrong".

While it was frankly conceded that portions of Central's operation were in violation of its certificated authority, whether these prior violations were excusable was primarily a matter for the Commission: *Arrow Carrier Corp. v. Public Service Commission*, 120 Pa. Superior Ct. 570, 182 A. 711. Central's position was that its illegal operations were largely due to a misunderstanding of the provisions of the Commission's General Order No. 29, particularly Rule 202 thereof.[2] In support of Central's assertion of good faith, there was testimony that it had filed and maintained rates with the Commission covering such service, and that it had in the past protested various applications filed by carriers desiring to perform similar service. In its order the Commission aptly stated: "That applicant would lay itself open to prosecution for unlawful operation by so calling attention to its operations, unless applicant believed itself to be operating within the rights granted by the Commission, does not commend itself to reason". As pointed out by Judge ERVIN in *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 182 Pa. Superior Ct. 54, 125 A. 2d 624, a finding of good faith is essential. The Commission made such a finding in the case at bar, and we see no reason to disturb it. The Commission is peculiarly fitted to interpret its own orders, especially where the question raised concerns the extent and limit of transportation rights: *Dillner Transfer Co. v. Pa. P. U. C. (No. 1)*, 175 Pa. Superior Ct. 461, 107 A. 2d 159. Although such interpretation is not conclusive on the courts, it may be persuasive:

---

[2] It should be noted that Rule 202 is not operative merely as a matter of policy or unlimited discretion. The findings and order of the Commission must have a substantial basis in the evidence: *Noerr Motor Freight, Inc. v. Pa. P. U. C.*, supra, 181 Pa. Superior Ct. 322, 124 A. 2d 393.

*Dillner Transfer Co. v. Pa. P. U. C. (No. 2),* 175 Pa. Superior Ct. 472, 107 A. 2d 164.

We are here confronted with a somewhat unusual situation in that a denial of Central's application would not preserve the status quo concerning service presently available to the public. On the contrary, it would eliminate service heretofore rendered which had proved eminently satisfactory, albeit unauthorized. In fact, it was conceded by witnesses for appellants that granting the application would not add to the competition already existing. In this connection the Commission states: "Therefore, denial of the application would deprive the public of a service, the need of which has been demonstrated by consistent public use. The very fact of the impressive and substantial recent investments which the protestants have made in equipment and facilities negatives any suggestion that applicant's activities have had a serious competitive effect upon them".

In conclusion, we have carefully reviewed the voluminous record and do not find errors of law, violation of constitutional rights, or lack of evidence to support the finding, determination, and orders of the Commission. It is our view that the evidence is sufficient, both as to quantity and quality, to justify the Commission's disposition of the complaint proceeding and its grant of additional authority. Approval of Central's application will not only accommodate many shippers along its routes, but will also permit the continuance of a public service of which these shippers have availed themselves and of which they stand in need. See *Lancaster Transportation Co. v. Pa. P. U. C.,* supra, 181 Pa. Superior Ct. 129, 124 A. 2d 380.

Orders affirmed.