## Follmer Trucking Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued December 17, 1958. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Harry H. Frank*, with him *Jefferson C. Barnhart*, *Sterling G. McNees*, and *McNees, Wallace & Nurick*, for appellant.

*William A. Goichman*, Assistant Counsel, with him *Thomas M. Kerrigan*, Counsel, for Pennsylvania Public Utility Commission, appellee.

*Robert H. Shertz*, with him *Shertz, Barnes & Shertz*, for intervening appellees.

*Harry W. Speidel*, with him *Snyder, Balmer & Kershner*, for intervening appellees.

*Robert P. Falat*, with him *Lockwood W. Fogg, Jr.*, for intervening appellee.

OPINION BY RHODES, P. J., April 16, 1959:

These four appeals from three related orders of the Pennsylvania Public Utility Commission of October 21, 1957, are by Follmer Trucking Company, a holder of certificates of public convenience from the commission.

A basic question involved on appeal is the extent of the hauling authority which had been allegedly granted to Follmer by the commission, or otherwise acquired. The present controversy as to Follmer's authority had its origin in three complaint proceedings

brought by competing carriers.[1]  The complaints alleged that Follmer had published rates, in violation of the Public Utility Law, in its Tariff Freight Pa. P. U. C. No. 22, effective May 28, 1953, which covered transportation of property between many points not authorized in its certificated authority.

Follmer held certificates of public convenience at A. 24885, Folders 5 and 13.  During the course of the complaint proceedings, or on October 13, 1954, Follmer filed an application with the commission at A. 24885, Folder 15.  The scope of this application is also an issue.  In general, Follmer asked the consolidation, integration, and re-certification at new Folder 15 of certain rights which Follmer had or claimed to have or sought to have in a new consolidated certificate; and that upon approval of such application Class A authority at Folder 5 and the certificate at Folder 13 be canceled.  Although they involved the common question of the extent of Follmer's certificated authority, the complaint and application proceedings were separate and distinct.  Extensive hearings were held after which the commission issued separate orders.  On October 21, 1957, the commission issued a combined order sustaining the complaints at C. 16199 and C. 16200, and an order sustaining the complaint of Highway Express Lines, Inc., at C. 16362.  By order also entered on October 21, 1957, the commission denied Follmer's application at A. 24885, Folder 15.  Thereupon Follmer filed a petition asking for rehearing and reconsideration in both the complaint and application proceedings.  The commission, on March 3, 1958, refused Follmer's petition for rehearing.  Follmer has

---

[1] The Reading Transportation Company filed a complaint against Follmer at C. 16199, and jointly with Karn's Transfer, Inc., at C. 16200 on August 4, 1954; Highway Express Lines, Inc., filed a separate complaint at C. 16362 on April 4, 1955.

appealed from the order denying the application at Folder 15 to this Court at No. 16, March Term, 1959, and it has appealed from the orders sustaining the complaints against it at Nos. 17, 18, 19, March Term, 1959.

The extent of Follmer's authority, as shown by the history of its certificates at A. 24885, Folders 5 and 13, is the issue in both the complaint and application proceedings. Although the complaint proceeding preceded the application proceeding chronologically, the issues can be more readily understood from a review of the application proceeding; therefore we shall consider first the appeal at No. 16, March Term, 1959.

Follmer Trucking Company began service in 1932. At present Follmer employs a total of 295 persons and operates 340 pieces of equipment consisting of 33 straight trucks, 109 tractors, 186 trailers, and 12 service cars and trucks. Follmer claims that the present application at A. 24885, Folder 15, filed October 13, 1954, was for the purpose of consolidation, integration, and re-certification in a new Folder 15 of all Class A rights held by Follmer at Folder 5 and of all the rights at Folder 13.

Follmer's authority at Folder 5, existing since 1937, had been amended on October 9, 1941, and on June 15, 1948. The commission has stated that the primary route under Folder 5 ran from Lock Haven through Williamsport, Sunbury, Shamokin, Pottsville, Hamburg, Allentown, and Reading to Philadelphia, with an alternate route along the Susquehanna River through Harrisburg and Lancaster to Philadelphia. Certain spur and additional routes were granted by the 1941 and 1948 amendments at Folder 5. In the application at Folder 13, Follmer, as transferee, sought part of the rights held by another carrier, Arrow Carrier Corporation. At the time of the original appli-

cation at Folder 13, on November 13, 1944, during the war emergency, the commission allowed Follmer the temporary privilege of exercising the rights applied for, pending final action of the commission. On January 21, 1952, the commission issued its order at Folder 13 transferring to Follmer two Class A routes, twelve Class D routes, and eight silk routes together with various restrictions covering the types of property authorized to be transported. As we have stated the extent of the authority sought by Follmer in the application at Folder 15 is in dispute. Follmer asserts that at Folder 15 it primarily wanted a combination and consolidation of previously existing authority, whereas protestants claim Follmer sought to combine Class A rights with Class D authority, and to acquire many new rights beyond the authority granted by the commission at Folders 5 and 13. More than twenty-four transportation companies protested Follmer's application at Folder 15. The commission held extensive hearings; and the record on appeal at No. 16, March Term, 1959, in this Court consists of 1,600 pages.

On October 21, 1957, the commission issued its order at A. 24885, Folder 15, in which it refused the application and stated, inter alia: "The Commission is not satisfied from the evidence that the applicant is entitled to the network of Class A rights in eastern Pennsylvania which it seeks. Its rights and the needs of the public were carefully appraised by the Commission at Folder 13, and the order there rendered sets forth in clear and unmistakable language what rights were intended to be granted to the applicant. The record does not demonstrate any real need for the consolidation or integration of present rights, the conversion of Class D rights to Class A rights, or for the granting of any new or tie-in rights."

Our scope of review from orders of the Commission is limited. As we have frequently said, an order of the commission may not be set aside except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights. Section 1107 of the Public Utility Law of 1937, as amended, 66 PS §1437; *Follmer Trucking Company v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 75, 80, 90 A. 2d 294; *Leaman Transportation Company v. Pennsylvania Public Utility Commission*, 175 Pa. Superior Ct. 553, 556, 106 A. 2d 901; *Modern Transfer Company v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 46, 50, 115 A. 2d 887.

The contentions by Follmer as appellant in the application proceeding at A. 24885, Folder 15, may be summarized as follows: (1) The commission did not consider present need for the service sought but based its refusal solely on the previous orders at Folders 5 and 13 as res judicata. (2) The application did not ask for the grant of new rights or the extension of the area of operations but only the consolidation and integration of rights or authority previously granted by the commission at Folders 5 and 13. (3) In any event, the commission should have granted Follmer's request for the correction of route numbers and clarification of ambiguities.

1. We think it is obvious that the commission based its refusal of the application at Folder 15 on the *present* need for the service as shown by the record then before it. In its order of refusal dated October 21, 1957, the commission noted that many of the rights sought at Folder 15 were similar to those previously requested at Folder 13. The commission pointed out that its order of January 21, 1952, at Folder 13 was a detailed and final adjudication of the rights sought;

and that Follmer had taken an appeal to this Court from the 1952 order at Folder 13, which appeal was thereafter abandoned. The commission was passing upon present need for the service now requested when it stated: "We are not convinced or persuaded by the *present* credible evidence that the order at Folder 13 is either erroneous or confusing. [Italics supplied] . . . As to the additional tie-in routes or new rights sought here for the first time, we do not feel that the evidence sufficiently establishes a need for such rights. The testimony offered does not incline us to the conclusion that the service offered by present certificated transportation facilities in the various districts is inadequate." We believe that the commission properly treated the application at Folder 15 as embracing new rights and combinations of rights, and properly concluded that the evidence then before it did not establish a present need for the authority requested. Accordingly it dismissed the application. Further, the commission held that Follmer's existing authority was unambiguously set forth in detail in the previous orders at Folders 5 and 13, and that, in the absence of any showing of public necessity, Follmer's existing authority was defined by its certificates. We find no basis for the assertion that the commission rested its refusal of the application at Folder 15 solely upon the principle of res judicata or that it refused to consider the present need for the service sought. The commission commented in its order of March 3, 1958, refusing rehearing: "The rights and the desires of the applicant have been before the Commission several times, and each time have been given thoughtful appraisal based on the record developed in connection with the then pending application. The present application has been carefully considered in the light of the evidence produced in support thereof, and the Commission has recorded its decision as

set forth in the orders filed on October 21, 1957. The litigation has been sufficiently protracted and should be concluded."

2. Did the application at A. 24885, Folder 15, in substance seek new and additional rights or merely consolidation within the area of rights previously granted at Folders 5 and 13? A common question raised in the appeals before us is the extent of the authority granted Follmer at Folders 5 and 13. When we examine Follmer's authority at Folder 5, as amended, and especially at Folder 13, we find that the commission by its order at A. 24885, Folder 13, clearly defined Follmer's rights. Follmer presents three basic arguments or theories to support the extensive authority now sought, and these theories are relied upon in both the application and the complaint proceedings. In brief, Follmer contends that it had special permission in November, 1944, at Folder 13, to transport general commodities pending disposition of the application at Folder 13; that it, as transferee of Arrow's rights, held the same Class A authority as Arrow formerly exercised; that its rights received from Arrow were in fact Class A rights, although in some instances designated Class D by the commission's order of January 21, 1952, thus having the right under General Order No. 29 of the commission to combine these routes which were allegedly Class A routes. Follmer presented these same basic contentions before the commission in the applications at Folders 13 and 15. They will be further discussed hereafter. In its order of January 21, 1952, at Folder 13, the commission specifically defined the rights granted Follmer, named two Class A routes and 12 Class D routes, together with eight silk routes, and designated the extent to which these routes could be combined and the points of service. Furthermore, although Follmer's application at Folder 15 in general

language sought a new certificate in lieu of previous certificates, it is clear from the evidence and from the commission's order of January 21, 1952, at Folder 13, that Follmer in fact sought rights properly designated as substantial additional rights over and beyond those previously held. As we view it, Follmer has attempted to obtain by its broad claims rights previously canceled, denied, or never allowed by the commission, but which it continues to exercise.

The rights held by Follmer at Folders 5 and 13 may be somewhat involved due to many factors, including gradual growth and expansion, acquisition of rights from other carriers, and the fact that rights may have arisen out of authority claimed by Follmer as modified by the rights of competing carriers. However, the rights of Follmer were clearly defined; Follmer's application at Folder 15 was given due consideration by the commission; the factual and legal issues raised were fully discussed and decided; and an order was entered which is sufficiently specific to enable this Court to pass upon the questions raised on appeal. See *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 343, 351, 352, 124 A. 2d 685.

We find no merit in Follmer's attempt to expand and extend its rights beyond Folders 5 and 13. The three technical arguments were adequately considered by the commission and properly rejected thereby disposing of any basis for its claims for new rights by its application at Folder 15.

Follmer's own witness admitted that it sought additional operating rights and privileges between many points some not previously certificated. For example, additional authority sought included the right to transport property between Allentown and Phoenixville on Routes 29, 100, and 83 to Hazleton; from Scranton to

the Stroudsburg area; from Kutztown to Ephrata over Route 222; from points on route 309 between Montgomeryville and Allentown, including such points as Perkasie, Quakertown, and Souderton. It is unnecessary to recite the many other points for which authority beyond its existing rights was admittedly sought by Follmer in its application at Folder 15, some of which were subsequently abandoned.

The burden of proof to establish rights requested in addition to those presently existing at Folders 5 and 13 was upon Follmer. It was obliged to establish (1) the need for additional and proposed service, and (2) inadequacy of existing service. *Modern Transfer Company v. Pennsylvania Public Utility Commission,* supra, 179 Pa. Superior Ct. 46, 51, 115 A. 2d 887; *Modern Transfer Co.; Inc. v. Pennsylvania Public Utility Commission,* 182 Pa. Superior Ct. 110, 114, 125 A. 2d 463; *Motor Freight Express v. Pennsylvania Public Utility Commission,* 188 Pa. Superior Ct. 80, 85, 146 A. 2d 323. The testimony of some of Follmer's shipper witnesses contained statements tending to show that the existing service was satisfactory, while the evidence presented by protestants indicated present adequacy of the service by other carriers. The evidence of the need for the additional rights sought by Follmer at Folder 15 was, at most, conflicting. Where the evidence is conflicting as to the need for the proposed service it is for the commission to determine whether the available equipment and facilities are sufficient to meet the public demands; the extent of competition is largely an administrative question within the sound discretion of the commission. *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* supra, 175 Pa. Superior Ct. 553, 559, 106 A. 2d 901; *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1),* 180 Pa. Superior Ct. 294, 301, 119

A. 2d 661. In its order of October 21, 1957, refusing the application at Folder 15, the commission stated: "The testimony offered does not incline us to the conclusion that the service offered by present certificated transportation facilities in the various districts is inadequate." The evidence supports the commission's finding in this respect, and we are bound by it on appeal. Follmer argues that the commission failed to consider the service rendered over the years to many shippers by Follmer. In this connection the commission indicated that it did not consider such past service by Follmer as evidence of public need, as such service was beyond its certificated authority and unauthorized. In view of the fact that the final order of the commission at Folder 13 was unappealed from, and that this order definitely prescribed Follmer's rights, affording no basis for any misunderstanding of the service authorized, it cannot be said that the unlawful or unauthorized operation was such as to require a finding that the service had been rendered in good faith, or that the commission was bound to consider such service on the question of need for the proposed service. Cf. *Lancaster Transportation Company v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 129, 138-140, 124 A. 2d 380; *The Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 54, 63, 125 A. 2d 624; *Harry F. Atkinson & Sons v. Pennsylvania Public Utility Commission*, 186 Pa. Superior Ct. 537, 541, 142 A. 2d 760. The commission was correct in pointing out that "The present evidence does not demonstrate to the Commission that the shippers who have been using Follmer's service could not have used the services of authorized and certificated carriers to take care of their transportation needs."

3. Follmer complains that in Folder 15 the commission did not authorize the correction of highway route numbers and various ambiguities in its presently outstanding certificates. The commission considered this contention in detail in its order of March 3, 1958, refusing Follmer's petition for rehearing where it pointed out that the application at Folder 15 was essentially a request for a new certificate embracing many additional rights, and not simply a request to consolidate, integrate, and re-certificate Follmer's existing rights. The commission exercised its discretion and refused Follmer's application for a new certificate and new rights, and in its order of March 3, 1958, made this pertinent statement:

". . . It was not the intent or purpose of the application to seek to have corrected any existing certificates with the thought that they remain in force. The action sought was a new certificate at Folder 15 and the cancellation of the certificates at Folder 5 and Folder 13.

"If the applicant desires a correction in any route numbers in his certificates at Folder 5 or Folder 13, it is not precluded from making application for such relief. The application upon which the Commission acted was not one asking alternative relief, but was definitely an effort to obtain a new consolidated certificate. Therefore, applicant's contention that no consideration was given to requests which did not involve the issues of convenience and necessity is without merit, as there was no request to do so in the event the main prayer of the application was refused."

Apparently it was recognized that Follmer's application itself was lacking in clarity. At a hearing before the commission on January 24 and 25, 1955, counsel for Follmer stated: "I will say that what we are asking for is a certificate now subject to these restric-

tions, and we are asking for clarification of this authority. *Now, what new authority it will create, we are not prepared to say.*" (Italics supplied.)

Turning to the complaint proceedings C. 16199, C. 16200, and C. 16362 (Appeals Nos. 17, 18, and 19, March Term, 1959), we find that the basic issue is the same as in the application at Folder 15—What is the extent of Follmer's presently outstanding certificated authority? We have recited the chronology of the complaint proceedings earlier in the opinion and there is no need for repetition. In its orders in the complaint proceedings, dated October 21, 1957, the commission sustained the complaints, and directed Follmer to "cease and desist from publishing rates to and from points for which it has no authority." It also ordered Follmer to revise its tariffs in conformity with the commission's findings and orders.

On the appeals at Nos. 17, 18, and 19, March Term, 1959, in this Court, Follmer attacks the orders of the commission of October 21, 1957, sustaining the complaints. It is argued that the commission's orders "lack specific findings, and are so vague and indefinite as to violate appellant's right to due process of law." Follmer's position is that the commission's orders sustaining the complaints are vague, general, and indefinite in failing to name specific points as to which authority had been granted. Findings in cases involving carriers by motor vehicle need not always be as detailed as those in a rate case, but in all instances they must be sufficiently definite and specific to make compliance feasible, and to enable this Court to pass upon the legal questions involved. *Alko Express Lines v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 27, 35, 30 A. 2d 440; *Follmer Trucking Company v. Pennsylvania Public Utility Commission,* supra, 171 Pa. Superior Ct. 75, 79, 90 A. 2d 294; *Noerr*

*Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 62, 69, 118 A. 2d 248.

In the complaint proceedings, as in the application at Folder 15, Follmer asserted authority to serve the many contested geographical points under three main theories or grounds of justification.

First. Follmer asserted it had the additional rights in question by virtue of special permission given in November of 1944 when the commission gave Follmer Class A rights under the application at Folder 13, pending final order on the transfer of rights from Arrow Carrier Corporation. As to this contention the commission stated in the consolidated order of October 21, 1957 : "The authority of the respondent is stated clearly in its certificates at Folders 5 and 13. The orders of the Commission at both folders are now final and conclusive. The petition to reconsider the order at Folder 13 was denied. The appeal from the order of the Commission at Folder 13 to the Superior Court was withdrawn and discontinued by respondent. . . . The argument of respondent that it was acting under a special permission pending disposition of its application at Folder 13 has no validity at this time since said application was determined and adjudicated by the Commission's order at Folder 13 on January 21, 1952. Whatever temporary rights it may have had prior to said order were annulled and displaced by the permanent order of the Commission." The temporary rights granted pending disposition of the application at Folder 13 were superseded and resolved by the commission's final order of January 21, 1952. Cf. *McCormick v. Pennsylvania Public Utility Commission,* 151 Pa. Superior Ct. 196, 200, 30 A. 2d 327. Here, as in *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission (No. 1),* 175 Pa. Superior Ct. 461,

468, 107 A. 2d 159, 163, "Appellant must rely on the authority contained in the various certificates issued by the Commission from which no appeal was taken."

Second. Follmer further took the position that the rights in Folder 13 were Class A rights in the hands of Arrow Carrier Corporation, the transferor, and remained such in the hands of the transferee. The commission pointed out that the final order of January 21, 1952, at Folder 13, expressly limited, certain rights transferred, in the hands of the transferee; that such final order was definite and became conclusive when the appeal therefrom was discontinued. Under section 1112 of the Public Utility Law of 1937, 66 PS §1442, the finding and determination of the commission is conclusive unless modified on appeal. Cf. *Bickley v. Pennsylvania Public Utility Commission*, 148 Pa. Superior Ct. 399, 405, 25 A. 2d 589.

Follmer points to the following wording of the commission's order of January 21, 1952, at Folder 13, as giving it authority to combine routes: "In order that transferee may maintain service over the routes to be transferred similar to that which prevailed prior to the change, it will be necessary to permit through service by Follmer between points on the routes to be transferred and service from points on said routes to the major points on the routes which are to be retained by Arrow. Such authority will afford shippers within the area affected by the transfer access to the same kind of service which originally prevailed." Under the exhaustive ruling of the commission on these appeals, this general language did not give Follmer the broad authority claimed in its tariffs. The service on the routes retained by Arrow was to be performed by Arrow and not by Follmer. The general language used by the commission in its order of January 21, 1952, at Folder 13, must be regarded as subject to the spe-

cific Class A and Class D authority enumerated therein in detail. ". . . the Commission, as an administrative agency, is peculiarly fitted to interpret its own orders, especially where the question raised concerns the extent and limit of transportation rights granted a carrier under a certificate issued by the Commission." *W. J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission*, supra, 175 Pa. Superior Ct. 461, 467, 107 A. 2d 159, 162. We think that the commission was sufficiently specific in defining Follmer's authority so that there could be no substantial doubt of its limits or place Follmer in a position where it was unable to comply with the orders of the commission. Any remaining inherent ambiguities are inconsequential and do not require a reversal of the orders or a remand of this proceeding.

Third. Follmer has also asserted that, while certain rights in the order of the commission of January 21, 1952, at Folder 13, were "for structural convenience of description, denominated Class D," they were in reality portions of Arrow's Class A authority, which had been transferred. In answer to this contention the commission stated in its final order of October 21, 1957, sustaining the complaints at C. 16199 and C. 16200: "When the Commission, in its order at Folder 13, saw fit to describe certain rights as Class D rights, its classification and definition of these rights was deliberate and not inadvertent. Its specific order relative to these rights determines the extent of the rights enjoyed. Respondent cannot resort to General Order 29[2] as authorizing rights which were specifically

---

[2] General Order No. 29 was promulgated by the commission pursuant to the authority contained in section 901 of the Public Utility Law of May 28, 1937, P. L. 1053; 66 PS §1341. It classified common carriers by motor vehicle and enumerates their rights and limitations under each class. See *Noerr Motor Freight, Inc. v.*

denied or restricted by the Commission at Folder 13."

There are many specific geographical points involved under the hauling authority which Follmer asserts in these proceedings. Most of these contested points are ruled by the commission's rejection of Follmer's three broad theories under which it claims the extensive authority. A brief reference to the testimony and record relating to some of these points will illustrate that the evidence supports the commission's orders, and that the orders are sufficiently definite. For instance, Follmer claims the right to serve and transport property from the points of East Greenville, Green Lane, and Palm. Follmer points to paragraph (I) of Folder 13 as giving it extended authority: "Between Allentown, Lehigh County and Phoenixville, Chester County, via Highway Route 29 to Hereford, thence via Highway Route 100 to Pottstown, thence via Highway Route 83, . . ." It would seem from this description that Route 29 can be used only from Allentown to Hereford. East Greenville, Green Lane, and Palm are located on Route 29 between Hereford and Phoenixville, and therefore are not within the rights granted. It would serve no purpose to enumerate many other examples. Not only the records but the extensive briefs and arguments disclose the adequacy and the validity of the commssion's orders. In sustaining the complaints, the commission was not obliged to engage in useless repetition of issues previously adjudicated by prior decisions or orders of the commission.

We have no doubt from the record that Follmer understood the scope of its certificates of public convenience, and that it can file tariffs in accordance with

---

*Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 62, 67, 118 A. 2d 248; *Lancaster Transportation Company v. Pennsylanvia Public Utility Commission*, 169 Pa. Superior Ct. 284, 82 A. 2d 291.

its actual authority. The commission was justified in refusing an extention of rights and the granting of new rights on theories properly rejected by the commission. As we find no error in law, lack of evidence or deprivation of due process, the respective orders of the commission are affirmed.

The order issued by this Court on April 17, 1958, making the appeals, Nos. 17, 18, and 19, March Term, 1959, a supersedeas of the commission's order, is vacated, and supersedeas is terminated.

The orders of the commission are affirmed at the cost of appellant.