Warminster Township Municipal Authority, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued October 1, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Peter Platten,* with him *Richardson Blair* and *Ballard, Spahr, Andrews & Ingersoll,* for authority, appellant.

*Louis J. Carter,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission, appellee.

*Paul H. Rhoads,* with him *Frederick E. Smith* and *Rhoads, Sinon & Reader,* for applicant, intervening appellee.

OPINION BY RHODES, P. J., January 21, 1958:

This is an appeal from an order of the Pennsylvania Public Utility Commission; the sufficiency of the evidence to support the order of the commission is the question presented by appellant.

The commission, on June 10, 1957, ordered that certificates of public convenience be issued to the Hartsville Sewerage Company (hereinafter called "Hartsville") evidencing the commission's approval of its incorporation, organization, and creation, and authorizing the beginning of the exercise of the right, power, or privilege of furnishing sewage collection and disposal service to the public in a designated portion of Warminster Township, Bucks County.[1] The order requires Hartsville to obtain a permit from the Department of Health before beginning to render service. Hartsville had previously obtained Letters Patent

---

[1] Pursuant to section 201 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1121.

from the Secretary of the Commonwealth under the Act of April 29, 1874, P. L. 73, as amended, 15 PS §1, et seq. This appeal has been taken by the Warminster Township Municipal Authority (hereinafter called "Authority") which also has the authority and proposes to render sewerage service in the same area. It is the only appellant.

The applications of Hartsville for approval of its incorporation and of the right to begin to render sewage collection and disposal service were filed with the commission on October 3, 1956. On November 3, 1956, the Authority filed a motion to dismiss the applications, which motion the commission denied. On November 10, 1956, the Authority filed protests to the granting of the applications. Hearings were held on November 16, 1956, and April 5, 1957. Argument was held before the commission; the order approving the applications of Hartsville for certificates of public convenience was then issued.

Hartsville was being organized for the purpose of constructing and maintaining sewers, conduits, and disposal facilities to furnish sewage collection and disposal service to the public in an area of approximately eight hundred acres situate in the northwesterly portion of Warminster Township. The area is bounded on the north by Little Neshaminy Creek, into which Hartsville proposes to discharge the effluent from its plant. At the time of this proceeding, this area was essentially rural with a few houses. Four of the incorporators of Hartsville are real estate developers who contemplate the construction of approximately one thousand eight hundred houses in the proposed service territory, one hundred to three hundred of which are planned for construction in the first year of Hartsville's operation. Prior to the construction of the houses in the developments and the paving of streets

therein, the developers desire to install the necessary sewerage facilities in order to preclude the tearing up and repaving of streets as each dwelling is constructed and ready to be connected to the sewerage system. The area at present has no sewerage facilities. Except for Hartsville, there is no present prospect that any such service will be established. The Authority, which was created under the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §301, was designated by the Board of Supervisors of Warminster Township, on February 7, 1955, as the sole and exclusive instrumentality for constructing and operating a public sewerage system within the township. On March 10, 1955, the supervisors directed the Authority to undertake a study, and to develop plans encompassing the township sewage problem. A resolution of March 5, 1956, authorized the Authority to acquire and operate a sewerage system and sewage treatment and disposal works. However, notwithstanding these resolutions, the Authority was unable to proceed. Its chairman testified: "The Authority has no present funds available to it and no present source of revenue with which to support the issuance of sewer revenue bonds in an amount sufficient to pay for the cost of construction of either the plant which the developers desire to construct or the plant which the Authority desires to construct." The Authority cannot raise the funds because there is an insufficient number of residents in the area at present. It was the Authority's proposal that the developers place sufficient funds in escrow to cover the cost of construction of a plant by the Authority, and that the developers install all sewerage facilities within their own tracts. The Authority would later reimburse them for the money placed in escrow. Alternate proposals would have the developers guarantee payment to the Authority of sufficient funds to op-

erate and to issue bonds for the cost of constructing the plant and sewerage facilities, or have the developers build the plant and give the Authority an option to purchase. In substance the Authority desired that the developers finance the plant and facilities for the Authority.

The Authority has acquiesced in the jurisdiction of the commission to grant the certificates of public convenience to Hartsville, and does not contend that it alone has the right to render sewerage service to residents of the township. On this appeal the contention of the Authority is that the grant of authority to Hartsville to incorporate and render public sewerage service in the area is not supported by substantial evidence of the necessity for such service. It is argued that there were no public witnesses to the need for sewerage service in the area other than the real estate developers and their engineers, and that their testimony concerning the planned developments is insufficient to support the order of the commission.

It is fundamental that the burden was upon Hartsville to establish a public need for the proposed service, the lack or inadequacy of existing facilities, as well as its own ability to render the proposed service. *Modern Transfer Company v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 46, 51, 115 A. 2d 887. What may constitute a need for service depends upon the locality involved and the particular circumstances of each case. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 322, 330, 124 A. 2d 393. There is no legal requirement that the commission's order must be supported by any particular type of evidence as long as the evidence is legally sufficient. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 420, 85 A. 2d 646.

If the testimony is competent, its weight is for the commission. *H. J. Gongaware & Sons v. Pennsylvania Public Utility Commission,* 163 Pa. Superior Ct. 9, 10, 60 A. 2d 364. The evidence may come from public witnesses, from prospective customers, from the applicant, or from other sources. On the question of necessity, Hartsville produced four of its incorporators as witnesses; they were also the four real estate developers. They testified that they propose to build approximately one thousand eight hundred houses, one hundred to three hundred of which will be built in the first year; that the area at present is essentially rural with a few houses; that there are no existing sewerage facilities; and that it is necessary that the sewerage system and disposal plant be built concurrently with the developments in order to avoid the additional expense and inconvenience of later tearing up the streets. (Even the chairman of the Authority testified that it was "necessary and desirable" that the sewerage system and disposal plant be constructed concurrently with the developments.) There were no public or other witnesses called by Hartsville as to the need for service. The reason for the absence of any public or other witnesses is apparent because, until the developments are started, there are no customers who would need the service. Moreover, until Hartsville is authorized to build the sewerage system and disposal plant the developers cannot, as a practical matter, begin the construction of the houses. It was not essential that public or other witnesses be produced; the absence of such witnesses, with any resulting implication, is adequately explained by the circumstances of this case.

The Authority also contends that there is insufficient evidence of need because none of the developers has an agreement binding him to build any number of houses and develop his respective tract. The Author-

ity stresses the fact that one of the developers, Herbert Barness, testified that construction of the houses could cease as economic conditions changed. In this connection the Authority also relies on the fact that none of the plans for development had been approved by the Planning Commission of Warminster Township.[2] The existence or nonexistence of agreements obligating the developers to build a certain number of houses was a matter for the commission to consider in determining the reliability of the developers' testimony as to their plans and intentions. The good faith of the developers would be demonstrated by the fact, if accepted, that each will purchase $1,000 of the capital stock of Hartsville, each will contribute $25,000 in cash to the corporation, and each will guarantee a note for one-fourth of the cost of constructing the disposal plant. In addition the developers will construct all the intercepters, mains, and laterals on their respective tracts and convey the system to Hartsville as a contribution and at no cost to the utility. And the fact that the plans for the developments had not been approved by the planning commission of the township was also a factor to be considered by the commission in weighing the evidence of need. The developers must of course comply with the proper regulations of the township concerning the developments. But the township, by means of its zoning powers, could not regulate or obstruct the grant of authority by the commission to Hartsville to render public utility service. See *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287. It is our opinion that, under the circumstances, especially the fact that the developments cannot be commenced as a practical mat-

---

[2] See Act of May 1, 1933, P. L. 103, Article XX-A, §2055. added by Act of July 13, 1953, P. L. 404, §1, 53 PS §67055.

ter until the sewerage system and disposal plant are constructed or authorized, the evidence of need was competent and substantial[3] and supports the grant of authority. Certificates of public convenience are granted to operate prospectively, and their issuance must be supported by evidence of a public need for service. This generally means a need in existence at the time of the grant of authority and one which will continue in the reasonably foreseeable future. The immediate need in this case has been competently and sufficiently shown by the testimony of the developers, accepted by the commission, that from one hundred to three hundred houses will be constructed in the first year with an eventual total of at least one thousand eight hundred. The present need is also demonstrated by the fact that their construction is contingent upon the sewerage system and disposal plant being authorized or provided. The question as to the sufficiency of the evidence is directly related to the nature and extent of the rights sought. *Modern Transfer Company v. Pennsylvania Public Utility Commission,* supra, 179 Pa. Superior Ct. 46, 56, 115 A. 2d 887. We have frequently said that the proposed service of an applicant need only be shown to be reasonably necessary for the accommodation or convenience of the public; that it need not be shown to be absolutely indispensable. *Pitts-*

---

[3] ". . . substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . Substantial evidence has also been said to mean evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. . . . 'Substantial evidence' is synonymous with 'competent and relevant evidence having a rational probative force.' Evidence to be substantial must have rational probative force." *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 416, 85 A. 2d 646, 650.

*burgh & Lake Erie Railroad Company v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 420, 85 A. 2d 646. On this record the need for Hartville's service is clear in view of the extensive home developments which are being delayed until adequate sewerage service is furnished.

The inadequacy of facilities to service the additional houses is also clear. All parties agree that there are no present facilities. The only possible service, other than by Hartsville, would be that which the Authority might furnish; and admittedly the Authority cannot raise the money to provide service until after the houses are built or unless the developers furnish the funds for the Authority. As we have indicated, the chairman of the Authority agreed that it was necessary and desirable that the sewerage system and disposal plant be constructed concurrently with the developments.

The ability of Hartsville to render the proposed service has been established in this record. Hartsville has obtained complete and detailed plans and specifications for construction of the facilities necessary for the collection, treatment, and disposal of sewage. The system and plant have been tentatively approved but are subject to a final approval by the Department of Health. The bids for construction of the disposal plant were received, and the successful bidder indicated that work could begin within fifteen days of the award of the contract. The initial cost of the project, including the treatment or disposal plant, collection system, and other expenses would be approximately $319,000. Of this sum, $189,000 represents the cost of the collection system which the developers will build at their own expense and contribute to Hartsville. The initial cost of the treatment or disposal plant will be approximately $130,000, which will be borrowed by Hartsville on

notes endorsed by the developers. Additions would be made as required and financed in the same manner. Hartsville will also receive $5,000 in stock subscriptions plus $25,000 from each of the four developers, or a total of $105,000. This amount will cover the $25,000 estimated total cost for the acquisition of land, engineering, and legal fees, and other organization expenses; the balance will provide working capital. The rates to be charged for service cannot be determined until after the system and the plant are constructed, but they will be computed on the usage of water. Hartsville does not contemplate making any tappage charge.

The Authority's additional contention is that the findings of fact in the order are insufficient. The commission's order contains detailed statements of fact. Although the findings of the commission are not designated and numbered as such, they do amount to findings of fact rather than a mere recital of the testimony of witnesses. The essential requirement is that the commission's order be sufficiently specific to enable us to determine the controverted questions and whether proper weight was given to the evidence. *Lancaster Transportation Company v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 129, 141, 124 A. 2d 380.

It is our conclusion that the findings and order of the commission are supported by substantial evidence. Consequently, the order will be affirmed.

The commission filed a motion to quash the appeal of the Authority on the ground that it was not a qualified appellant. We are of the opinion that the Authority, which was a party to and participated in the proceeding before the commission, had a sufficient interest to appeal. By virtue of the resolution of the Board of Supervisors of Warminster Township, the Authority was empowered and directed to undertake

the establishment of sewerage service for the township, including the affected area. Although the Authority is not subject to the general regulatory jurisdiction of the commission (*Rankin v. Chester Municipal Authority*, 165 Pa. Superior Ct. 438, 68 A. 2d 458), the effect of the grant of certificates of public convenience to Hartsville is to preclude the Authority from subsequently rendering competitive sewerage service to the same area. Municipality Authorities Act of May 2, 1945, P. L. 382, §4, as amended, 53 PS §306 A.[4] The Authority is thus a party to the proceeding and is affected thereby. Public Utility Law of May 28, 1937, P. L. 1053, §1101 (a), 66 PS §1431 (a). See *Arsenal Board of Trade v. Pennsylvania Public Utility Commission*, 166 Pa. Superior Ct. 548, 72 A. 2d 612; *Rydal-Meadowbrook Civic Association v. Pennsylvania Public Utility Commission*, 173 Pa. Superior Ct. 380, 98 A. 2d 481. Therefore this case differs from *Wattsburg Telephone Cooperative Association v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 594, 601, 128 A. 2d 160, where a complaint filed by a telephone cooperative association to the rendition of service by an authorized public utility in a certain area was not sustained because the telephone cooperative association was not obligated to provide service in the affected area.

The order is affirmed, at the cost of appellant.

---

[4] This section provides in part: "The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, improvement, maintenance, extension or operation of any project or projects which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes."