Motor Freight Express et al., Appellants, *v.*
Pennsylvania Public Utility Commission.

Argued September 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Edward Goldberg,* for appellants.

*Robert Engel,* with him *Glick, Berkman & Engel,* for John F. Scott Company, appellant.

*Aloysius F. Mahler,* with him *John H. Scott, Jr.* and *Reed, Smith, Shaw & McClay,* for appellant.

*James H. Booser,* with him *McNees, Wallace & Nurick,* for appellant.

*Paul F. Barnes,* with him *Raymond A. Thistle, Jr.,* and *Shertz, Barnes & Shertz,* for appellants.

*William A. Goichman,* Assistant Counsel, with him *Paul Ribner,* Assistant Counsel, and *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*William S. Yard, Frederick L. Kiger,* and *Bloom, Bloom & Yard,* for intervening appellee, submitted a brief.

OPINION BY GUNTHER, J., November 14, 1958:

These appeals are by Motor Freight Express, Breman's Transfer, Breman's Express Company, John F. Scott Company, The Pennsylvania Railroad Company, Pittsburgh and Lake Erie Railroad Company, Philadelphia-Pittsburgh Carriers, Inc., Kramer Bros. Freight Lines, Inc., Highway Express Lines, Inc., and Modern Transfer Company, Inc., from an order of the Pennsylvania Public Utility Commission which granted to Al Zeffiro Transfer and Storage, Inc. additional authority to transport, as a Class C carrier property from the Borough of Donora, Washington County, and points within 15 miles by the usually travelled highways of the limits of said Borough to points in Pennsylvania. The sufficiency of the evidence as to need

and inadequacy of service to support the order of the commission is questioned by these appeals.

By application filed with the commission on February 2, 1956 and docketed at Application No. 66674, Folder 9, and thereafter amended, the applicant sought additional authority to transport *as a Class D carrier* property, with certain exceptions, from the Borough of Donora. This application was protested by approximately 38 motor carriers and two rail carriers out of which 18 motor carriers and two rail carriers presented testimony in opposition to the application. Hearings were held at Washington, Pittsburgh and Philadelphia on March 15, May 21 and 22, July 9, September 13 and November 1, 1956. On February 10, 1958, the commission entered an order in "short form" granting the additional right to the applicant as requested but eliminated a number of other rights. Appellants appealed from this order and, upon petition of the commission to remand the record for further study and consideration, we remanded the record on April 25, 1958, directing the commission to make specific findings of fact in sufficient detail so as to enable us on appeal to determine the controverted questions presented. We further ordered that the supersedeas remain in force and effect pending the return of the record to us. On June 16, 1958, the commission issued an order in lieu of the order of February 10, 1958, granting applicant the additional authority *to transport as a Class C carrier* property from Donora area to points in Pennsylvania and refusing the application insofar as it referred to all other transportation as lacking in necessity. At the same time, the commission eliminated certain rights under A. 66674, Folder 2, Folder 5, and cancelled the certificates issued at Folders 3, 4 and 10. From this order, a number of appellants filed petitions for supersedeas and on July 17, 1958, we ordered all the appeals

consolidated and listed the same for argument for September 10, 1958 both on the merits and on the question of supersedeas.

The territory of Donora and 15 miles thereof takes in sections of the counties of Washington, Allegheny, Westmoreland and Fayette, and municipalities such as Charleroi, Monessen, Monongahela, New Eagle, Elizabeth, Clairton, West Newton, Brownsville, California and Belle Vernon. At the time of the application, the applicant had the right to transport for any shipper within 15 miles of Donora to points within 35 miles, and vice versa. In addition, it also had the right to transport as a Class C carrier for approximately a dozen shippers to any point in Pennsylvania. Appellants, however, did not contest these rights. They are contesting the extension of the Class C rights to include any shipper within the area to any point in Pennsylvania. The rights granted by the commission, they contend, are not considered as a consolidation of existing rights but, rather, an extension of rights not heretofore enjoyed by the applicant.

The commission found that there is need for applicant's service from Donora and the adjacent territory to points within the State and concluded that a grant of rights, limited to transportation from Donora and 15 miles thereof to points in Pennsylvania, is necessary and proper for the service, accommodation and convenience of the public. The commission also found that there is no evidence of need on the part of shippers located throughout the State to transport property from points within the State to the Borough of Donora and 15 miles thereof.

Apparently it is conceded by all that the test for determining whether a certificate of public convenience should issue is public need or necessity. However, appellants maintain that the applicant failed to prove

by substantial evidence a need for the service applied for, or the inadequacy of the existing service. As a consequence of this lack of evidence, the commission, it is contended, had no basis upon which to grant the rights here involved.

We have held repeatedly that our review is not to substitute our judgment for that of the commission, but to determine whether there is error of law or lack of evidence to support the order of the commission. *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 185 Pa. Superior Ct. 115, 138 A. 2d 279; *Pittsburgh & Lake Erie Railroad Co. v. Pa. P. U. C.*, 170 Pa. Superior Ct. 411, 85 A. 2d 646. We must, therefore, determine whether this record contains either errors of law or lack of evidence to support the order here entered.

In an application for the enlargement of the authority here requested, the burden of proof is upon the applicant to establish the need for additional service and the inadequacy of existing services extending throughout the area to which the order applies. *Wiley v. Pa. P. U. C.*, 186 Pa. Superior Ct. 309, 142 A. 2d 763; *Pennsylvania Railroad Co. v. Pa. P. U. C.*, 182 Pa. Superior Ct. 54, 125 A. 2d 624; *Leaman Transportation Corp. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 303, 33 A. 2d 721. What may constitute a need for service, however, justifying the issuance of a certificate of public convenience depends upon the locality involved and the particular circumstances of each case. *Warminster Township Municipal Authority v. Pa. P. U. C.*, 185 Pa. Superior Ct. 431, 138 A. 2d 240.

In support of its burden, the applicant presented the testimony of seven shippers. Frank O. Patterson, president of Pittsburgh Flexicore Co., Inc., testified that his company is engaged in the manufacture of pre-stressed concrete floor and roof slabs which are used in the construction of buildings. These slabs are

transported on flat-bed trailers from the company's plant at Monongahela, Pa., to job sites. This company has been transporting its product in its own and leased equipment and has used applicant's services to points within the scope of its previously granted authority. This witness stated that his company has 30 to 45 days from the time it receives approved drawings on a particular contracting job until it requires transportation. Generally, a contractor to whom this company supplies its material, knows two to three weeks in advance when he is going to be ready to receive the materials. Occasionally, this shipper received only a day or half day's notice prior to the requested delivery. This company made no investigation to determine what carriers are presently authorized to render the service desired and the witness admitted that the applicant is not the only one who could render service to his company.

Raymond T. Lee, traffic manager of Fenestra, Inc., testified that his company has a plant at West Elizabeth, Pa., which produces steel roofing and steel and aluminum siding used principally in schools and commercial buildings. This witness named only five points in Pennsylvania to which his company shipped its products by motor carrier in the past three years; that his company employed the services of approximately a dozen motor carriers and, with the exception of one or two shipments, the services rendered were satisfactory. In addition, this company shipped a considerable quantity of its products by rail.

Arthur Dash, Assistant Traffic Manager for Combustion Engineering in East Monongahela, Pa., testified that his company manufactures steam generating and power plant equipment and large stokers for industrial plants. The applicant was authorized to serve this company for emergency shipments to points in Pennsylvania. Shipments move carload by rail and

less-than-truckload by motor carrier. The plant is served by Pittsburgh & Lake Erie Railroad and the witness admitted that rail service was satisfactory. Dash said that the company desired trucks to be at the plant at 7 or 8 A.M., but no later than 2 P.M., otherwise the labor crew would have to work overtime. He stated that his company used the services of at least ten motor carriers and that their services were satisfactory with the exception of two.

The plant of Graefin Cooper Corporation, located at New Eagle, Pa., produces wire coat hangers and wire staples. About 90 per cent of its products moves out of the State Interstate commerce and about half of the remaining ten per cent is marketed within the 35-mile radius of Donora. John Sturlese, superintendent, testified that only five to six per cent of the plant production, less than a ton a day, is shipped to points outside of the authority now held by the applicant. To these points, the shipper used various carriers and in general has found their services satisfactory. This witness had one complaint concerning the service of existing carriers. A sprocket which had been transported by Goose Goslin Express, Inc., was received in a damaged condition, but he admitted that he did not know who caused the damage and that no proof of claim was submitted. The witness further testified that he knew applicant had the right to haul from Pittsburgh to New Eagle and that he had nevertheless used Samuels Express and that this service was satisfactory.

Selwin Weiss, vice president and general manager of Weiss Packing Company, Inc., testified that his company operated a slaughterhouse at Turkey Hollow, Pa., and sold fresh meats, poultry and dairy products. These products are transported in the packing company's trucks to customers within a 35-mile radius of

its plant and that the primary reason for supporting the applicant was for the transportation of its nonedible products. The witness stated that the nonedibles are usually sold to a broker who provides the transportation to the ultimate point of destination. Occasionally the broker's equipment is not available and in those instances the packing company's truck is used. This witness also testified that the only shipments to the Philadelphia area of fresh meats were sample shipments in an attempt to develop business in that area but that it had never requested the applicant to ship fresh meats to the east.

Admiral Homes, Inc., manufactures prefabricated homes at its plant at West Newton, Pa. The applicant was already authorized to transport property for this shipper from West Newton to points in Pennsylvania. Two witnesses for this shipper testified in support of that part of the application seeking authority for an inbound movement to the Donora area from points in Pennsylvania. James W. Kuenning, plant manager, testified concerning certain negotiations to purchase lumber from a Philadelphia broker and truck the same to its plant. Although these negotiations had been going on for two years prior to the date of the hearing, no agreement had been reached. He further testified that lumber presently is received by rail and he did not know when, if ever, the service from Philadelphia would be needed. Admiral receives shingles and felt roofing from York, Pa., aluminum casement windows from Philadelphia, and garage doors from Lewistown, Pa. While it encountered difficulties because of late shipments, Mr. Kubler, purchasing agent, testified that the inbound shipments to his company were handled by carriers selected by the suppliers and that his company did not have the right to or select the carrier. Although Mr. Kubler testified to a few iso-

lated complaints about inbound service, it is significant to point out that the commission found that the record is barren of any evidence of a need for applicant's services for inbound shipments. As a matter of fact, Mr. Kubler testified that when he did suggest the applicant for inbound shipments, the suppliers refused to honor such request.

Associated Box Corporation of New Eagle, Pa., manufactures wooden pallets, boxes and crates. Vandergrift, Pa., is the only point to which this company supported the application and to which applicant was not authorized to serve. However, this support was based upon the company's hope of obtaining business from U. S. Steel by reason of the expansion of that plant. The witness admitted that he had made no effort to determine whether existing carriers could render service to Vandergrift other than calling one or two in years past, and stated that he would be willing to give existing carriers an opportunity to perform such services.

These were all the witnesses who supported the application and it was from the testimony of these witnesses that the commission found as a fact the need for the services authorized. The appellants presented testimony as to their respective certificated rights as well as to the adequacy of their services. Without detailing this testimony, it is sufficient to state that while no one protesting carrier had the right to transport from the origin territory to all points in Pennsylvania, all of them combined covered practically the entire state. From such testimony offered, the commission found that the service of the protesting carriers was inadequate.

We have searched the record for substantial evidence to sustain the conclusion that the present facilities were not adequate to accommodate the public but

fail to find evidence necessary to sustain the finding of the commission of this phase. While it may be said that in some isolated instances there were complaints as to the manner in which a particular carrier had served a certain shipper, the fact remains that there were a sufficient number of other carriers available to give satisfactory service. This record is barren of any evidence that the existing carriers are either unable or unwilling to meet any reasonable demands for service that may be made upon them. And while applicant, quite naturally, desires to perform the service requested and the shipper desires to obtain the services of the applicant, neither the desire to serve nor the desire to obtain the applicant's services is sufficient to grant the application. *Wiley v. Pa. P. U. C.,* supra.

We are not unmindful of the rule that where the evidence presents a conflict as to the inadequacy of the existing service and the public need of an applicant's proposed service in a given area, the sufficiency of the available facilities and the extent of competition to be allowed are administrative questions within the sound discretion and judgment of the commission. *Motor Freight Express v. Pa. P. U. C.,* 180 Pa. Superior Ct. 294, 119 A. 2d 661. But we fail to find any conflict in this record which could justify the exercise of sound discretion. On the contrary, the testimony is clear that all or most of the shippers called to support the need for service and the inadequacy of existing service testified that other carriers have been used on many occasions and that their services were satisfactory.

The order of the commission is reversed.

———

DISSENTING OPINION BY WRIGHT, J.:

This is the type of proceeding which should be disposed of at the Commission level. It involves an ap-

plication to combine existing transportation rights and to obtain additional authority incidental to the primary purpose of combination. In the proper exercise of its function the Commission examined the evidence and made an appropriate order. We have said repeatedly that the extent to which there shall be competition in intrastate transportation is a matter of policy which the legislature has committed to the sound judgment and discretion of the Commission. The record does not disclose errors of law, violation of constitutional rights, or insufficiency of evidence. The Commission's order should therefore be affirmed. Cf. *Daily Motor Express, Inc. v. Pa. P. U. C.*, 183 Pa. Superior Ct. 120, 130 A. 2d 234.

WOODSIDE, J., joins in this dissent.