Mocanaqua Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Township of Conyngham, Intervenor.

Argued September 14, 1981, before Judges BLATT, MacPHAIL and PALLADINO, sitting as a panel of three.

*Paul A. Barrett, Nogi, O'Malley & Harris, P.C.,* for petitioner.

*Larry Gesoff,* Assistant Counsel, with him *Shirley Rae Don,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Albert J. Flora, Jr.,* for intervenor.

OPINION BY JUDGE MacPHAIL, October 26, 1981:

This is a petition for review of an order of the Pennsylvania Public Utility Commission (PUC) entered September 19, 1980 against the Mocanaqua Water Company (Water Company). To better understand the issue before this Court for review, a brief outline of the history of this case is in order.

The Township of Conyngham (Township) filed a complaint with the PUC on February 28, 1979, alleging that the Water Company was furnishing the Township with water which had a bad taste, gave off an offensive odor, often carried sediment and was generally unsatisfactory for drinking and cooking purposes. On June 15, 1979 Thomas J. Jones, the Administrative Law Judge (ALJ), handed down his decision, ordering the Water Company to maintain a chlorine residual in its system at all times so as to ensure bacteriological safety and to improve the protection of its watershed, thereby prohibiting human activity near the water supply. The ALJ dismissed all other complaints.

The Township appealed this decision to the PUC on August 1, 1979. The PUC directed that oral argument be held, ordering its staff to file an amicus brief on the question of whether the PUC may order facility changes where the water passes safety tests of the Pennsylvania Department of Environmental Resources, yet is aesthetically poor in quality and unpleasant in taste. As a result of this hearing, the PUC concluded that it could require such changes and entered the order which is the subject of this petition. That order is as follows:

It is ordered:

1. That the complaint of the Township of Conyngham is sustained.

2. That the Mocanaqua Water Company maintain an effective chlorine residual in its system at all times and closely monitor the system for such chlorine residual.

3. That said chlorination facilities and procedures are to be in conformity with the American Water Works Association specifications for improvements.

4. That Mocanaqua Water Company improve the protection of its watersheds by restricting any human activity in the area.

5. That, within thirty days of the entry date of this Order, Mocanaqua Water Company shall file with this Commission a proposal for the improvement of its service.

The Water Company does not complain here of the first four paragraphs of the order, paragraphs two, three and four being only adoptions from the ALJ's initial decision. The Water Company also has not sought review of the PUC's decision that it could order facilities changes for aesthetic reasons. The Water Company's only contention here is that paragraph five is too vague for enforcement in that it fails to indicate the *specific* improvements which are to be made in the Water Company's service. The Water Company argues that Section 1505 of the Public Utility Code (Code)[1] requires specificity, that absent specificity the PUC can arbitrarily reject improvements proposed by the Water Company and that specificity is needed to enable proper appellate review of the case.

A careful reading of the law in this area indicates that the Water Company has misread prior opinions on specificity for appellate review. In *Aizen v. Pennsylvania Public Utility Commission,* 163 Pa. Superior Ct. 305, 314, 60 A.2d 443, 448 (1948), for example, the court stated that "sufficiently specific and definite

---

[1] Whenever the commission . . . finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate [or] insufficient . . . the commission shall determine and prescribe, by regulation or order, the . . . facilities to be . . . furnished . . . including all such repairs, changes, alterations, extentions, substitutions, or improvements in facilities as shall be reasonably necessary and proper.

*findings"* (emphasis added) are needed to enable review by the courts. Similarly, in *Warminster Township Municipal Authority v. Pennsylvania Public Utility Commission*, 185 Pa. Superior Ct. 431, 138 A.2d 240 (1958) the court required specificity in the *findings of fact* in order that the court could properly review the Board's decision. *See Dutchland Tours v. Pennsylvania Public Utility Commission*, 13 Pa. Commonwealth Ct. 54, 318 A.2d 394 (1974); 66 Pa. C. S. §703(e).

This is not to say that the PUC may issue orders which are so vague as to provide no guidance to the utility regarding what actions are necessary to achieve compliance. The order must be of such reasonable clarity so as to apprise the parties concerned of the extent of their duties. *See Noerr Motor Freight v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 62, 66, 118 A.2d 248, 250 (1955). This case presents no problem of vagueness. A reading of the entire adjudication discloses the service deficiencies which the PUC has identified.[2] Correction of these deficiencies will result in compliance with the order.

The Water Company complains that the order as written can result in arbitrary rejection by the PUC of proposals made by the Water Company. There is

---

[2] The Adjudication reads in part as follows:

The record in this proceeding shows that the two reservoirs which supply the Company's system with water are open reservoirs with unprotected watersheds. The system has no filtration plant, and the water is chlorinated by means of gas chlorination injected directly into the system. . . . The record also shows that the water furnished by Mocanaqua Water Company has a bad taste, gives off an offensive odor, and frequently carries a sediment and debris such as twigs and even insects. In addition, the record shows that the Company's customers find the water supply to them unacceptable for ordinary and necessary uses, and are forced to incur the burden of purchasing laundry services and of seeking other supplies of drinking water (at least one of which is unsafe).

absolutely no evidence that the PUC will engage in arbitrary action when a proposal is made. The Water Company has not as yet suggested any changes. We cannot presume that the agency will act arbitrarily in determining whether a proposal will suffice in correcting deficiencies. See *Pennsylvania Retailers' Association, Reliable, Inc. v. Lazin*, 57 Pa. Commonwealth Ct. 232, 426 A.2d 712, 717 (1981). This Court is available if and when the PUC arbitrarily rejects a proposal. *Weston Hauling v. Pennsylvania Public Utility Commission*, 185 Pa. Superior Ct. 503, 138 A.2d 286 (1958).

Finally, we come to the Water Company's contention that Section 1505 of the Code mandates a detailed description of the changes needed to improve the service provided. Perhaps in a situation in which the PUC has the ability to determine precisely the changes needed this Court would require a description of the alterations in detail. But when faced with a situation in which alternative solutions exist, or where the utility is more expert in determining what changes are needed, or where it is impossible for the PUC to know in advance exactly what improvements are necessary to attain desired results, then it is entirely proper for the PUC to define the service deficiencies and request a plan from the utility. Upon the receipt of such a plan from the Water Company, the PUC may wish to amend its order under Section 703(g) of the Code, 66 Pa. C. S. §703(g), to reflect the needed improvements.

Furthermore, the PUC's argument that the Water Company could have requested a modification or clarification of the instant order under the same Section 703(g) if it had any questions has considerable merit. Our Supreme Court has held in *Abramson v. Pennsylvania Public Utility Commission*, 489 Pa. 267, 414 A.2d 60 (1980) that a party could request a modification of a PUC order under Section 1007 of the Public Utility

Law, Act of May 28, 1937, P.L. 1053, 66 P.S. §1397, which has now been recodified as Section 703(g). Thus, if the Water Company felt it could not provide a plan, then it should have requested an amended order, leaving it to the PUC to choose what improvements are necessary. The PUC should not be faulted at this stage, however, for giving the Water Company the first chance at devising a solution for the problem with the water provided to the Township.

Order affirmed.

ORDER

AND Now, this 26th day of October, 1981, the order of the Public Utility Commission dated September 19, 1980 is hereby affirmed.

Judge MENCER did not participate in the decision in this case.